# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

THOMAS M. O'BRIEN,

      Petitioner,

-vs                                     Case No.  8:04-cv-0809-T-27MAP

JAMES R. MCDONOUGH,[1]

      Respondent.

_____/

## ORDER

Petitioner, THOMAS O'BRIEN ("Petitioner"), a Florida prison inmate, brings this amended habeas corpus petition pursuant to 28 U.S.C. § 2254 (Dkt. 13) challenging his state conviction arising out of the Twelfth Judicial Circuit for Manatee County, Florida in case number 98-2835F. The Respondent has responded to the amended petition (Dkt. 23), and Petitioner has replied to the response (Dkt. 21).

On December 14, 2007, the Court held an evidentiary hearing on Petitioner's claim that his trial counsel was ineffective by failing to call Ethel Stevenson as a witness on his behalf (Dkt. 32). Following the conclusion of the evidentiary hearing, the Court announced its decision denying Petitioner's claim.

This matter is now before the Court for consideration on the merits of the amended petition. A recitation of the procedural history of Petitioner's criminal conviction is not necessary to the

---

[1]James McDonough, the current Secretary of the Florida Department of Corrections, is substituted as the proper party respondent for James V. Crosby, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

resolution of his habeas claims because Respondent does not dispute the timeliness of the petition or assert that the claims are not exhausted in state court.

## Standard of Review

Pursuant to 28 U.S.C. § 2254(a), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), enacted and effective on April 24, 1996,  "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a). Where a state court initially considers the issues raised in the petition and enters a decision on the merits, § 2254(d) governs the review of those claims. *See Penry v. Johnson,* 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003).

Habeas relief may not be granted with respect to a claim adjudicated on the merits in a state court unless the adjudication of the claim:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented  in the State court proceeding.

28 U.S.C. § 2254(d). *Price v. Vincent*, 538 U.S. 634, 638-39 (2003); *Clark v. Crosby*, 335 F.3d 1303, 1308 (11th Cir. 2003).  Even where a state court denies an application for post-conviction relief without written opinion, in this circuit that decision is entitled to the same deference as if the state court had entered written findings to support its decision.  *See Wright v. Sec. of Dept. of Corrs.*, 278 F.3d 1245, 1255  (11th Cir. 2002).

Finally, a state court's factual finding is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence.   28 U.S.C. § 2254(e)(1); Henderson, 353 F.3d at 890-91.

## Evidentiary Hearing

To be entitled to an evidentiary hearing on habeas claims, the petitioner must "allege[] facts that, if proved at the hearing, would entitle petitioner to relief." *Breedlove v. Moore*, 279 F.3d 952, 960 (11th Cir. 2002) (citation omitted). As noted, *supra*, the Court held an evidentiary hearing on Petitioner's claim of ineffective assistance of trial counsel for failing to call Ethel Stevenson as a witness.  For reasons discussed below, an evidentiary hearing is not required for the disposition of the Petitioner's remaining claims. Rules Governing Section 2254 Cases 8(a). *See Atwater v. Crosby*, 451 F.3d 799, 812 (11th Cir. 2006) (addressing the petitioner's claim that his requests for an evidentiary hearing on the issue of trial counsel's effectiveness during the penalty phase of his trial in both the state and federal courts were improperly denied, the court held that an evidentiary hearing should be denied "if such a hearing would not assist in the resolution of his claim.").

## Discussion

Since Petitioner's conviction was entered after AEDPA was enacted, his petition is subject to the provisions thereof. Where, as here, a state court initially considered the issues raised in the petition and entered a decision on the merits, § 2254(d) governs the review of the petitioner's claim. *See Mobley v. Head,*  267 F.3d 1312, 1316 (11th Cir. 2001).

## Ground One

In Ground One, Petitioner raises an ineffective assistance of counsel claim.  He claims his attorney was ineffective by failing to call Ethel Stevenson, agents from the Florida Department of

-3-

Children and Families (hereafter "DCF"), and Detective Starling as witnesses on his behalf.  He asserts that: 1) Ethel Stevenson would have testified that she spent the entire night with Petitioner during the time the crime allegedly took place; 2) the DCF agents would have testified that DCF records did not show any evidence of abuse of the child victim; and 3) Detective Starling would have confirmed that the parents of the victim failed to keep appointments and failed to come forward with the alleged victim or cooperate in providing any information until 73 days after the incident.

To establish a prima facie claim of ineffective assistance of counsel at trial, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Deficient performance is performance which is objectively unreasonable under prevailing professional norms.  *Id.* at 688.  Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

"[T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776 (1987)).  Because the ultimate resolution of ineffective assistance of counsel claims is a mixed question of law and fact, *Thompson v. Haley*, 255 F.3d 1292, 1297 (11th Cir. 2001); *Meeks v. Moore*, 216 F.3d 951, 959 (11th Cir. 2000), the presumption of correctness contained in § 2254(e)(1) does not apply to this determination. *Parker v. Head*, 244 F.3d 831, 835-37 (11th Cir. 2001).  State court findings of historical facts made in the course of evaluating an ineffectiveness claim are, however, subject to a presumption of correctness under 28 U.S.C. § 2254(e) unless the petitioner demonstrates by clear and convincing evidence that they are incorrect, *see Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), a burden that Petitioner has failed to carry. *See*

§ 2254(e)(1).

This claim was raised and rejected in Petitioner's Rule 3.850 proceedings.[2]  The state post-conviction court set forth the correct standard of review for an ineffective assistance of counsel claim (Dkt. 19, Ex. 17 at 2). Thus, to be entitled to relief under § 2254, Petitioner must establish that the trial courts's application of the *Strickland* standard in reaching the determination that the claims raised in his Rule 3.850 motion lack merit was objectively unreasonable or that the decision "was based on an unreasonable determination of the facts in light of the evidence presented." *See* 28 U.S.C. § 2254(d).

In its order denying the Rule 3.850 motion, the state post-conviction court found as follows:

> **Ground Five**: Defendant alleges counsel was ineffective in failing to investigate and move for a continuance in order to locate Defendant's only alibi witness, Ethel Stevenson. Defendant alleges that Stevenson would have testified that she spent the night with him and he never left her side that night. This statement is flatly contradicted by the Defendant's own trial testimony wherein he admitted leaving the bedroom at least one time after "retiring" for the evening in order to obtain another beer. (T.T. 104-105) Therefore, it is unlikely that Stevenson's testimony would have exonerated him.
>
> Nonetheless, Defendant claims counsel was deficient in failing to ask for a continuance in order to locate Stevenson. In a criminal case, a motion for continuance is addressed to the sound discretion of the trial court, and denial of such a motion will not be reversed absent a palpable abuse of discretion. *See Magill v. State,* 386 So.2d 1188, 1189 (Fla. 1980). The other testimony in this case suggests that the crime took place in the absence of any witnesses, *i.e.*, only the Defendant and victim were present. Although Stevenson conceivably could have testified that the Defendant remained in the bedroom until confronted and asked to leave, it is highly doubtful that such testimony would have overcome the testimony of the victim and other witnesses, thus raising a reasonable probability of a different outcome to the Defendant's trial.

---

[2]In his state Rule 3.850 motion, Petitioner raised this claim as his Grounds Five, Six, and Seven.  (Dkt. 19, Ex. 16 at 29-37).

**Ground Six**: Defendant alleges counsel was ineffective in failing to investigate or follow up on an investigative subpoena served upon the Florida Department of Children and Families (DCF) in order to obtain evidence in his favor that could have been used at trial. Defendant asserts that DCF indicated that a search of their records revealed no abuse or public assistance records concerning the victim. Defendant asserts that DCF "always" conducts an investigation of sexual abuse complaints. Therefore, had counsel secured a DCF witness to testify at his trial, "there exists a reasonable probability the Departments testimony would have been in the Defendants favor" and "would have definitely made a difference" in his case.

Again, this is nothing more than mere speculation on the defendant's part. Assuming a DCF witness did testify that no further investigation was performed upon receipt of the sexual abuse incident report, there is no reasonable probability that the outcome of the Defendant's trial would have been different. That is because defense counsel elicited the same information without the necessity of calling a DCF witness. Counsel asked the investigating deputy, Deputy Biggs, whether he ever got any response from the state abuse registry. Biggs indicated there was no response other than a confirmation that DCF had received his report. (T.T. 88-89) In the absence of any other testimony on this issue, the only reasonable inference to be drawn from this information is that DCF conducted no follow-up investigation. Defendant has failed to demonstrate any prejudice resulting from not having a DCF witness testify at his trial.

**Ground Seven**: Defendant alleges counsel was ineffective in failing to call Detective Ed Starling as a witness on his behalf at trial. He maintains that Detective Starling could have testified as to the lapse of time between the alleged incident and the victim's first statement to law enforcement. According to the Defendant, this testimony would have demonstrated that the victim's statement was not spontaneous, reliable, truthful or trustworthy. To the extent Defendant is again attacking the evidence underlying his conviction, this issue is clearly precluded from collateral attack.

Moreover, the trial transcript reveals that counsel elicited testimony regarding the lapse between the incident and the victim's first statement to law enforcement from the victim herself (T.T. 68, 70-72) and then effectively utilized this time lapse testimony in her closing argument to the jury. (T.T. 121, 137-138) Thus, once again, the Defendant has failed to demonstrate any deficiency in his counsel's performance, much less any resultant prejudice.

(Dkt. 19, Ex. 17 at 8-10).

At the evidentiary hearing on December 14, 2007, the Court heard testimony from Petitioner

and Attorney Carolyn Schlemmer,[3] Petitioner's trial counsel.[4] Petitioner testified that on the night of the offense Ethel Stevenson was in the bedroom with him and was awake at all times he was awake. He attested that when he met with the investigator from Attorney Schlemmer's office, the investigator never asked him to identify any witnesses. He testified that he told Attorney Schlemmer and made it clear to her that he wanted her to contact Ethel Stevenson and call her as a witness on his behalf. He stated that Attorney Schlemmer never really responded to his requests to find Ethel Stevenson and instead focused on other issues in the case. He maintained that prior to trial he wanted Attorney Schlemmer to ask for a continuance so that they could attempt to contact Ethel Stevenson.

Attorney Schlemmer, an experienced criminal defense attorney, testified that she maintains detailed written records for each client she represents. She stated that her written records indicate that on November 3, 1998, an investigator from her office first met with and interviewed Petitioner. The investigator utilized a standard form in which there is a section for defendants to list any and all witnesses they may have, but Petitioner did not list any witnesses.

Attorney Schlemmer testified that she first met with Petitioner on March 19, 1999, at which time Petitioner told her that Ethel Stevenson had been sleeping in the bedroom they shared on the night of the offense, and he also admitted to her that he had left the bedroom at least two times that night. Attorney Schlemmer stated that she liked to have her clients participate in their defense, and she would regularly have them prepare a summary of the incident. She asked Petitioner to prepare

---

[3] f/k/a Carolyn DaSilva.

[4] The parties stipulated that Ethel Stevenson passed away on November 6, 2006, and, therefore, was unavailable to testify.

a summary, and Petitioner prepared a summary in which he did not state that on the night of the offense Ethel Stevenson had been awake the entire time, nor did he state that she would have testified that Petitioner never left the bedroom. Petitioner also informed her that Ethel Stevenson was a victim of Petitioner's. Attorney Schlemmer testified that Petitioner never asked her to contact Ethel Stevenson as a witness.

Attorney Schlemmer determined that she would not call Ethel Stevenson as a witness because Ethel Stevenson would not be an alibi witness for Petitioner as Petitioner had already stated that Ethel Stevenson had been sleeping on the night of the offense, and that he had left the bedroom at least two times that night. Moreover, Ethel Stevenson was a victim of Petitioner's. Also, Attorney Schlemmer had an ethical concern that if she called Ethel Stevenson as a witness she may suborn perjury because Petitioner had already admitted to her that he had left the bedroom at least twice, and told her that Ethel Stevenson had been sleeping that night. Finally, Attorney Schlemmer determined that she did not want to waive Petitioner's entitlement to first and last closing argument.[5]

Attorney Schlemmer testified that on June 14, 1999, the jury was selected for Petitioner's trial. Her notes reflect that on June 15, 1999, she had a discussion with Petitioner regarding Ethel Stevenson, at which time Petitioner indicated that he did not know where she lived but thought she was in New Jersey. Her notes also reflect that on June 16, 1999, they again discussed Ethel Stevenson, and Petitioner stated that there may be some people who could locate her, but he agreed that she should not be called as a witness because her testimony would not be helpful.

_____

[5]At the time of Petitioner's trial, Fla. R. Crim. P. 3.250(1999) provided that "a defendant offering no testimony in his or her own behalf, except the defendant's own, shall be entitled to the concluding argument before the jury." At trial Petitioner presented only his own testimony, and his attorney presented the initial and concluding arguments (Dkt. 19, Ex. 26, Vol. II at 102-143).

The Court finds that Petitioner's testimony that he told Attorney Schlemmer that he wanted her to find Ethel Stevenson and call her as a witness is not credible.  Attorney Schlemmer testified that she kept detailed notes regarding her conversations with Petitioner.  She attested that her notes reflect that Petitioner had admitted to her that Ethel Stevenson had been sleeping on the night in question and that he had left the bedroom on at least two occasions that night.  Her notes also indicate that Petitioner was in agreement with her that Ethel Stevenson's testimony would not help him.

When Petitioner met with the investigator from Attorney Schlemmer's office, Petitioner did not indicate on the interview form that he had any witnesses.  In the letters he wrote to Attorney Schlemmer, and in the summary of the incident he prepared at Attorney Schlemmer's request, Petitioner did not indicate that he wanted to have Ethel Stevenson contacted or called as a witness, nor did he indicate that Ethel Stevenson had been awake the entire time in the bedroom with Petitioner on the night in question or that she would testify that he had never left the bedroom that night.  This further corroborates the Court's findings that Petitioner's testimony is not credible.

In assessing a lawyer's performance, "[c]ourts must 'indulge [the] strong presumption' that counsel's performance was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Chandler*, 218 F.3d at 1314.  "Our role in reviewing an ineffective assistance claim is not to 'grade' a lawyer's performance; instead, we determining only whether a lawyer's performance was within 'the wide range of professionally competent assistance.'" *Van Poyck v. Fla. Dept. Of Corrections*, 290 F.3d 1318, 1322 (11th Cir. 2002)(*quoting Strickland*, 466 U.S. at 690).  "The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the

action that his lawyer did take." *Id*. (*Citing Chandler*, 218 F.3d at 1315).

Counsel's trial strategy cannot be second guessed, as "judicial scrutiny of counsel's performance must be highly deferential." *Chandler*, 218 F.3d at 1314 (*quoting Strickland*, 466 U.S. at 689). Tactical decisions within the range of reasonable professional competence are not subject to collateral attack, unless a decision was so "patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983). The presumption is "that what the particular defense lawyer did at trial...were acts that some reasonable lawyer might do." *Chandler*, 218 F.3d at 1314-15.

Attorney Schlemmer's performance was not deficient as her decision not to pursue Ethel Stevenson as a witness was clearly a sound tactical decision which she discussed with Petitioner. First, Attorney Schlemmer concluded that Ethel Stevenson would not be an alibi witness for Petitioner as Petitioner had told her that Ethel Stevenson had been asleep in the bedroom, and told her that he had left the bedroom at least twice. Second, Attorney Schlemmer was concerned that Ethel Stevenson would not be a favorable witness as Petitioner had told her that Ethel Stevenson was a victim of his. Third, Attorney Schlemmer was concerned about the possibility of suborning perjury if she called Ethel Stevenson as Petitioner had already told her that Ethel Stevenson had been sleeping on the night of the offense and that he had left the bedroom at least twice that night. Fourth and finally, Attorney Schlemmer made a tactical decision that it would not be worth calling Ethel Stevenson as any testimony she may have provided would not outweigh the advantage of the defense having the right to first and last closing argument if Petitioner presented only his own testimony during trial.

Under *Strickland*, "counsel has a duty to make reasonable investigations or to make a

reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. However, "the reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* While trial counsel has a duty to investigate, "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." *Id.* Here, the evidence shows that Petitioner's own statements and actions gave Attorney Schlemmer reason to believe that pursing Ethel Stevenson as a witness "would be fruitless or even harmful." With the information available to her, Attorney Schlemmer made a reasonable decision not to pursue Ethel Stevenson as a witness.

Where, as here, Petitioner is unable to establish the first prong of the *Strickland* analysis, his claim must be dismissed. *See Coulter v. Herring*, 60 F.3d 1499, 1504 (11th Cir. 1995).

Petitioner also claims that trial counsel was ineffective by failing to call agents from the DCF who he claims could have testified that DCF had no abuse report regarding the victim in his case. Petitioner argues that under Florida law the DCF is required to investigate and prepare a report after it receives a report of child abuse[6], and if the DCF agents testified they did not prepare such a report, the presumption would be that no abuse of the victim ever occurred.

The state post-conviction court's decision on this claim resulted in a reasonable determination of the facts in light of the evidence and a reasonable application of *Strickland* under either prong. Trial counsel's performance was not deficient because she elicited from Deputy Biggs that he had sent his abuse report to the abuse registry, and that there was never any response to the report (Dkt.

---

[6]Petitioner states that Deputy Biggs faxed an abuse report regarding the victim to the Florida Abuse Hotline (Dkt. 19, Ex. 16 at 32).

19, Ex. 26, Vol. II at 88).  The Court also agrees with the state post-conviction court's conclusion that Petitioner was not prejudiced when his trial counsel did not call a DCF agent to testify that DCF did not have a DCF report regarding the incident, as the testimony would only show that DCF did not prepare or was not in possession of a report and would not establish that there was no abuse of the victim.

Finally, Petitioner claims that his trial counsel was ineffective in failing to call Detective Starling as a witness.  Petitioner asserts that Detective Starling could have testified that the parents of the victim failed to keep appointments with him and failed to "come forward with the victim" until seventy-three (73) days after the incident.  Petitioner argues that the parents' lack of cooperation and their delay in speaking to Detective Starling would have discredited the parents' and victim's testimony and shown that their testimony was not reliable or trustworthy.

Again, the state post-conviction court's decision on this claim resulted in a reasonable determination of the facts in light of the evidence and a reasonable application of *Strickland* under either prong. Trial counsel's performance was not deficient in this regard.  During closing argument she argued "[w]hy on 11/17 is [the victim] not there to give a statement?  If this is so serious and this - - everybody was rushing because there had been a quote molestation, why is she not giving a statement until two months later."  (Dkt. 19, Ex. 26, Vol. II at 137)   She also extensively cross-examined the State's witnesses regarding inconsistencies between their trial testimony and their previous statements, and during closing she attacked the trustworthiness of their testimony by pointing out the number of inconsistencies between their statements (Dkt. 19, Ex. 26, Vol. II at 45-46; 64-75; 100-101; 121; 135-140).

Likewise, Petitioner fails to establish prejudice as a result of trial counsel not calling

Detective Starling as a witness.  To establish prejudice, a petitioner must demonstrate a reasonable probability that, but for counsel's deficient performance, the result of his trial would have been different.  *United States v. Greer*, 440 F.3d 1267, 1272 (11th Cir. 2006).  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  *Rolling v. Crosby*, 438 F.3d 1296, 1300 (11th Cir. 2006). Petitioner fails to demonstrate a reasonable probability that, but for counsel's failure to call Detective Starling as a witness, the result of the proceeding would have been different.  The Court cannot find that had Detective Starling testified that the victim and her parents failed to keep several appointments with him for an interview regarding the incident that the result of the trial would have been different, especially in light of the fact that Petitioner's trial counsel thoroughly challenged the credibility of the victim's and other witnesses' testimony, and pointed out the delay between the date of the incident and the victim's first statement to the authorities. Petitioner fails to meet his burden of proving that the state court unreasonably applied controlling Supreme Court precedent or unreasonably determined the facts regarding this claim.

**Ground Two**

Petitioner asserts that his attorney was ineffective in failing to preclude the admission at trial of out of court hearsay statements by the State's witnesses, and in failing to adequately impeach the State's witnesses with their inconsistent statements.  This claim was raised and rejected in Petitioner's Rule 3.850 proceedings.[7]  In its order denying the Rule 3.850 motion, the post-conviction court found as follows on these issues:

> **Ground Three:** Defendant alleges counsel was ineffective for failing to

---

[7]In his state Rule 3.850 motion, Petitioner raised this claim as his Grounds Three, Four, and Eight.  (Dkt. 19, Ex. 16 at 15-28; 38-40).

file various pretrial motions "for the purpose of determining whether or not the alleged victims [sic] out of court hearsay and statements and testimony should be allowed at trial, and whether or not said statements and testimony" met various constitutional and statutory requirements. Under this ground, the Defendant: (1) attacks the lapse of time between the alleged incident and the victim's initial statement to law enforcement; (2) alleges that the victim's statement was "improperly influenced"; and (3) asserts that the spontaneous nature, reliability, trustworthiness, and truthfulness of the statement were questionable.

The Defendant's allegations, set out in (1) through (3) above, are nothing more than an attack on the sufficiency of the evidence underlying his conviction. As such, the issue should have been raised on appeal. "Issues that could have been, but were not, raised on direct appeal are not cognizable through collateral attack." *Harvey v. Dugger*, 656 So. 2d 1253, 1256 (Fla. 1995). Postconviction proceedings under Rule 3.850 are not to be used as a second appeal, nor is it appropriate to use a different argument to relitigate the same issue. *See Torres-Arboleda v. Dugger*, 636 So. 2d 1321, 1323 (Fla. 1994).

Again, the bulk of the Defendant's argument concerns the validity, reliability, spontaneity, and truthfulness of the victim's statement to Detective Starling. He asserts that no measures, such as videotaping, were taken to "safeguard" the victim's statement and, again, this brings into question the validity of her statement. As a result, he contends counsel was required to file "pretrial motions" to determine whether the victim's statement to Detective Starling was admissible under the Confrontation Clause of both the Florida and United States Constitutions. In his memorandum of law he cites *State v. Townsend*, 635 So. 2d 949 (Fla. 1994), in support of his contention that counsel was ineffective for failing to exclude the victim's statement.

The Defendant's argument has no merit. First, *Townsend* deals with the admissibility of a child victim's hearsay statement under § 90.803(23), regarding a sexual act perpetrated against the child, where that child has been determined incompetent as a witness. That issue was never raised in this case because the child victim testified against the Defendant. Therefore, *Townsend* is completely inapplicable in this case. Moreover, review of the cross-examination testimony of the victim reveals that defense counsel utilized statements previously made to defense counsel and to Detective Starling solely for the purposes of impeaching the victim and attempting to refresh her recollection. (T.T. 66-74) Thus, the statements were not admitted as substantive evidence in the case. As a result, the Defendant cannot show any prejudice by his counsel's alleged failure to file pretrial motions to exclude the prior statements of the victim. The statements were not admitted as substantive evidence under any hearsay exception.

-14-

**Ground Four**: Defendant alleges counsel was ineffective for failing to file various pretrial motions for the purpose of determining whether the statements of three State witnesses should have been admitted at trial. Defendant asserts that the statements of State witnesses, Thomas O'Brien III, Melissa Price and Beverly Hahn, were inconsistent, contradictory and did not meet the requirements of § 90.802 and § 90.805, Florida Statutes. Defendant claims that these statements should not have been admitted at trial because "such hearsay testimonies would easily confused and mislead the Jury towards the side of guilt, and the Jury's verdict to be unreliable and unfair."

Again, the Court notes that the primary thrust of the Defendant's complaint is to point out inconsistencies between the witnesses' recollection of the facts surrounding the incident. As noted above under Ground Three, such evidentiary issues should have been raised on direct appeal and are no precluded from collateral attack.

Defendant argues that counsel should have filed pretrial motions to prevent the hearsay statements contained in the witnesses' pretrial statements and depositions from being admitted at trial. Beverly Hahn did not render any hearsay testimony at trial. (T.T.19-26) The record reveals that defense counsel utilized the depositions of Thomas O'Brien III and Melissa Price solely for the purpose of impeachment by prior inconsistent statements. (T.T. 46, 100-101) Neither of these depositions was admitted as substantive evidence. Thus, all of the Evidence Code sections cited by the Defendant in his memorandum of law are inapplicable. Quite simply, defense counsel had no basis upon which to move to exclude the testimony of the State's fact witnesses. Therefore, counsel's performance was not deficient, and no prejudice has been demonstrated.

**Ground Eight**: Defendant alleges counsel was ineffective for failing to properly impeach or discredit the victim and the State's three key witnesses and in failing to point out "all the inconsistent, contradictory, hearsay with hearsay, coerced, improperly influenced, and unreliable out of court statements" to the jury during closing argument. The record of proceedings conclusively refutes the Defendant's claim.

The transcript demonstrates that counsel effectively utilized the prior statements of the victim, Thomas O'Brien III and Melissa Price to cross-examine and impeach them.  (T.T. 42-46, 63-75, 99-101) Then, counsel effectively pointed out the inconsistencies in their statements during her closing argument. (T.T. 117-121, 132-143) Therefore, the Defendant has failed to demonstrate any deficiency in his counsel's performance, much less any resultant prejudice.

(Dkt. 19, Ex. 17 at 5-8; 10).

The state post-conviction court's decision on this ground resulted in a reasonable determination of the facts in light of the evidence and a reasonable application of *Strickland* under either prong.  The state record demonstrates that Petitioner's attorney spent a significant amount of cross-examination time impeaching the State's witnesses with their prior inconsistent statements. (Dkt. 19, Ex. 26, Vol. II at 45-46; 64-75; 99-101).  Petitioner has failed to establish the deficiency prong of *Strickland* because it can be objectively concluded that at least one reasonably competent attorney could have determined that the cross examination and impeachment by defense counsel during trial was adequate. *See, e.g.*, *Routley v. Singletary*, 33 F.3d 1279, 1289 (11th Cir. 1994) ("When viewed in its totality, counsel's cross-examination of O'Brien concerning these matters was more than adequate. It is fair to say that counsel illuminated for the jury any inconsistency in her testimony and adequately explored any bias or motivation she might have had in testifying for the prosecution."). Further, the record shows Petitioner's counsel vigorously emphasized the witnesses' inconsistent statements during closing argument, pointing out the differences in their trial testimony and prior statements. (Dkt. 19, Ex. 26, Vol. II at 121; 135-140).

As pointed out by the state post-conviction court, the witnesses were thoroughly and vigorously cross-examined as to inconsistencies in their statements and accounts of events. In light of the victim's trial testimony, which established that the lewd and lascivious act had occurred, and the corroborating testimony of the State's witnesses, it is objectively reasonable to conclude there was no reasonable probability that further impeachment of the witnesses would have changed the outcome of the trial. Because the state decision resulted in a reasonable application of *Strickland* under the prejudice prong and a reasonable determination of the facts in

light of the record, Petitioner is not entitled to habeas corpus relief on this ground.

Petitioner's claim that his counsel was ineffective in failing to prevent the admission of the witnesses' out of court hearsay statements also fails.  The state post-conviction court correctly found that the witnesses' prior statements were utilized to impeach the witnesses and not utilized as substantive evidence.  *See, e.g., C.L.W. v. State*, 920 So. 2d 109, 110 (Fla. 1st DCA 2006)("[S]tatements are not hearsay when offered merely for impeachment purposes to demonstrate inconsistent statements, and not to prove the truth of the matter asserted.").

**Ground Three**

Petitioner claims that his counsel was ineffective in failing to object to, or request a curative jury instruction regarding, prosecutorial misconduct during closing argument.  Petitioner asserts that during closing argument the prosecutor improperly told the jury that they could "presume and assume" Petitioner had "lustful intent," improperly told the jury to disregard the court's jury instructions on reasonable doubt, and inappropriately asserted his personal beliefs and speculation by telling the jury it was "okay to speculate, imagine, and force themselves to believe the victim, but not the petitioner."

This claim was raised and rejected in Petitioner's Rule 3.850 proceedings.[8]  In its order denying the Rule 3.850 motion, the state post-conviction court found as follows on this issue:

> **Ground Nine**: Defendant alleges counsel was ineffective for failing to make adequate objection, failure to move for a mistrial, and fail [sic] to request the Court to issue curative instructions with regard to the State's closing argument. The Defendant notes that the prosecutor used the terms "assume" and "presume" in his closing argument. He argues that his counsel should have

---

[8]In his state Rule 3.850 motion, Petitioner raised this claim as his Ground Nine.  (Dkt. 19, Ex. 16 at 41-43).

objected, moved for a mistrial or, at least, asked the Court to issue a curative
instruction. Again, the record conclusively refutes the Defendant's claim.

Wide latitude is afforded to counsel during closing arguments. *See
Breedlove v. State*, 413 So.2d 1, 8 (Fla. 1982). Counsel's role in closing argument
is to assist the jury in analyzing the evidence. *See Ruiz v. State*, 743 So.2d 1, 4
(Fla. 1999). To that end, the prosecutor may state his contentions as to the
conclusions the jury should draw from the evidence. *Id*. Here, the Defendant takes
issue with the prosecutor's use of the words "presume" and "assume" during his
closing. First, the prosecutor stated,

> When Mr. O'Brien spoke to [the victim] and said do you want to
> jerk off, I don't think he was talking about satisfying his
> intellectual curiosity about her. I don't think he was trying to find
> out what her anatomy might be like. I think we can presume that he
> had a lustful intent, especially when he placed her hand on his
> penis.

(T.T. 121-122) Subsequently, in addressing the second element of the charge he
stated:

> Was this an act which was committed with a lewd, lascivious,
> lustful intent? I think you can assume that, Ladies and Gentlemen,
> there is no question about it. His statement, do you want to jerk off,
> he pulls his pants down, exposes himself to a child, places her
> hands on his genitalia, is there any other intent? He is not a doctor,
> he is not giving her an examination, he is not expecting her to
> examine him. There is no other intent that could possibly be in his
> mind at that point.

(T.T. 128) According to the Defendant, the prosecutor's use of these terms
convinced the jury to disregard the jury instructions on reasonable doubt. This,
however, is nothing more than speculation on the part of the Defendant.
Moreover, he ignores his counsel's repeated refutation of the prosecutor's remarks
during her final closing argument:

> It was very interesting some of the words that Mr. Quisenberry
> used. They have proved a lewd and lascivious act because Mr.
> O'Brien said that evening do you want to jerk off; his quote to you
> was presume, you can presume a lustful intent. Okay, let's presume
> a lustful intent, and let's leave and go home and have the rest of
> our days to ourselves. Presume? This is a criminal case, guilt
> beyond a reasonable doubt, not a presumption. They have not

proven - with what they even presented to you.

   ...

You're going to get the instruction in a few minutes. You can
presume? Presume is not guilt beyond a reasonable doubt. They
had to have proved it to you, period. You can't presume and return
a verdict of guilty.

   ...

How many people were in the house that night? We heard they had
a roommate there, all the children, Ethyl, Melissa, Tommy,
Tiffany, all those people in that house that evening. Somebody
turned the light off. Okay, well, let's assume and presume that it's
this man right here, so let's convict him. Then Mr. Quisenberry
used again the word assume, we can assume. Guilt beyond and to
the exclusion of all reasonable doubt is not a presumption, it is not
an assumption, it is not a maybe, a may have, a possibly, or a
probably.

   ...

This is the testimony you need to look at. You need to look at that
and determine have they proved to me beyond a reasonable doubt.
Because, folks, think to yourself, I can't presume and I can't
assume.

(T.T. at 132-134, 138)

   In this case, all the Defendant can offer is speculation that the jury
"assumed" or "presumed" his guilt. Defense counsel, however, refuted the
prosecutor's use of the words "presume" and "assume" during her closing.
Moreover, the Court properly instructed the jury on the burden of proof and on the
elements of the crime in question. (T.T. 144-153) The law presumes that the jury
followed the judge's instructions in the absence of evidence to the contrary. *See
Collier v. State*, 259 So.2d 765 (Fla. 1st DCA1972). Quite simply, the Defendant
has presented no evidence that the jury disregarded the Court's charge.

(Dkt. 19, Ex. 17 at 10-12).

   The first step in analyzing Ground Three is to determine if the prosecutor's argument was

improper because no matter how outcome-determinative it is, "a proper argument cannot render

the proceedings fundamentally unfair and therefore cannot be the basis for a constitutional

violation." *Romine v. Head,* 253 F.3d 1349, 1366 (11th Cir. 2001) (citing *Brooks v. Kemp,* 762

F.2d 1383, 1403 (11th Cir. 1985) (en banc) ("A permissible argument, no matter how 'prejudicial'

or 'persuasive,' can never be unconstitutional.")).

      In Florida courts, wide latitude is permitted in addressing a jury during closing argument.

*Breedlove v. State,413* So. 2d 1, 8 (Fla. 1982); *Thomas v. State*, 326 So. 2d 413 (Fla. 1975).

Logical inferences may be drawn and legitimate arguments advanced by prosecutors within the

limits of their forensic talents to effectuate law enforcement. *Spencer v. State*, 133 So. 2d 729

(Fla. 1961). Moreover, in order for the prosecutor's comments to merit a new trial under Florida

law, the comments must either deprive the defendant of a fair and impartial trial, materially

contribute to the conviction, be so harmful or fundamentally tainted as to require a new trial, or

be so inflammatory that they might have influenced the jury to reach a more severe verdict than

that it would have otherwise. *Spencer v. State,* 645 So.2d 377 (Fla. 1994).

      In considering a claim that the prosecutor's comments to the jury during closing argument

violated the petitioner's right to a fair trial, federal habeas corpus review is "the narrow one of

due process, and not the broad exercise of supervisory power." *Donnelly v. DeChristoforo*, 416

U.S. 637, 642, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974); *Romine v. Head*, 253 F.3d at 1365-66.

Federal case law regarding closing argument is the same as Florida law, *see, e.g.*, *Darden v.

Wainwright*, 477 U.S. 168, 179-183, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (quoting *Donnelly,*

416 U.S. at 643). It is not enough that a prosecutor's comments were undesirable or even

universally condemned. *Cobb v. Wainwright*, 609 F. 2d 754 (5th Cir. 1980). To amount to a

constitutional violation, the prosecutor's remarks must have "so infected the trial with unfairness

as to make the resulting conviction a denial of due process." *Donnelly*, 416 U.S. at 644. In

making this assessment, the reviewing court must consider the allegedly improper comments in the context of both the prosecutor's entire closing argument and the trial as a whole. *Branch v. Estelle*, 631 F. 2d 1229, 1233 (5th Cir. 1980).

Closing argument is intended to "assist the jury in analyzing, evaluating and applying the evidence." *United States v. Pearson*, 746 F.2d 787, 796 (11th Cir. 1984). While a prosecutor may not go beyond the evidence before the jury, he is not limited to a bare recitation of the facts; he may "comment" on the evidence, *id.,* and "state his contention as to the conclusions the jury should draw from the evidence." *United States v. Johns*, 734 F.2d 657, 663 (11th Cir.1984).

The prosecutor stated that the jury could "presume" or "assume" Petitioner's lustful intent because Petitioner asked the victim "do you want to jerk off?", and he pulled his pants down, exposed himself to the victim, and placed her hands on his genitalia.  (Dkt. 19, Ex. 24, Vol. II at 128).  The victim testified that Petitioner stated "do you want to jerk off?" and exposed himself to her and placed her hands on his genitalia.  (Dkt. 19, Ex. 24, Vol. II at 55-56).  The prosecutor's comments did not go beyond the evidence, and he was merely stating "his contention as to the conclusion the jury should draw from the evidence," i.e., that the jury should conclude Petitioner had lustful intent because of his comment to the victim and subsequent actions.  Therefore, the prosecutor's remarks were proper comments on the evidence, and the comments did not destroy the fairness of the proceeding.

Likewise, the record does not support the Petitioner's argument that the prosecutor implied that the jury could disregard the court's jury instruction on reasonable doubt when he stated that "doubt must not influence you to reach a verdict of not guilty."  During closing argument the prosecutor stated in pertinent part:

> And the definition of reasonable doubt, which you're going to hear,
> and you will have a copy of this, is a reasonable doubt, is not a
> mere possible doubt, a speculative, imaginary, a forced doubt.
> Such a doubt must not influence you to return a verdict of not
> guilty if you have an abiding conviction of guilt.

(Dkt. 19, Ex. 24, Vol. II at 122). The prosecutor was not suggesting that the jury find Petitioner

guilty even if they had reasonable doubt that Petitioner committed the crime, but, instead, he was

informing the jury that "possible, speculative, imaginary, or forced" doubt is not "reasonable

doubt" and should not prevent the jury from returning a guilty verdict. The prosecutor's

comments were wholly consistent with the court's jury instruction on reasonable doubt. (*See*

Dkt. 19, Ex. 24, Vol. II at 146-147). Therefore, the prosecutor's comments were not improper.

Finally, Petitioner claims that the prosecutor asserted his personal beliefs and encouraged

the jury to speculate when he told the jury that they could "speculate, imagine, and force

themselves" to believe the victim and not the Petitioner. The record reflects that during closing

argument the prosecutor stated in pertinent part, "[s]o you can speculate, imagine, or force

yourself to believe that this little girl, who has never met him before in her life, never, who was

by all accounts having a good time, had no problems with him, would decide to make all of this

up on her own." (Dkt. 19, Ex. 24, Vol. II at 122-123). The prosecutor's comment did not

encourage the jury to speculate and force themselves to believe the victim and not the Petitioner.

Instead, as reflected in the record, the prosecutor's comment informed the jury that they could

speculate that the victim made up the incident. Therefore, if anything, the prosecutor's comment

was prejudicial to the State and not to the Petitioner. Accordingly, the comment was not of such

a nature as to destroy the fairness of the proceeding.

Petitioner has not established that the state postconviction court's rejection of Ground Three resulted in a decision that is contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States, or that the decisions were based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. §2254(d). Petitioner is not, therefore, entitled to federal habeas relief on Ground Three.

**Ground Four**

Petitioner asserts that his counsel was ineffective in failing to request a jury instruction providing the legal definition of "force," and in failing to argue during her motion for judgment of acquittal that the State failed to prove the element of force.  Petitioner argues that there is no evidence in the record which shows that he "forcibly grabbed [the victim's] hand" or that he used force.

This claim was raised and rejected in Petitioner's Rule 3.850 proceedings.[9]  In its order denying the Rule 3.850 motion, the postconviction court found as follows on this issue:

> **Ground Ten**: Defendant alleges counsel was ineffective for failing to request special jury instructions pursuant to Fla. R. Crim. P. 3.390(c) and (d). Defendant argues that the standard jury instructions "failed to provide a sufficient statement of the statutory elements of the offense" with which he was charged.
>
> In this case, the Court instructed the jury on the elements of forcing or enticing a child under 16 to commit a lewd, lascivious or indecent act in accordance with Florida's Standard Criminal Jury Instructions. (T.T. 144-145) The requisite instruction does not define the term "force." Defendant contends that he was relying on the "incompleteness" in the State's case to produce his acquittal. Therefore, he asserts his counsel had a "duty" to submit a written request for a jury instruction giving a legal definition of "force."

---

[9]In his state Rule 3.850 motion, Petitioner raised this claim as his Grounds Ten and Eleven.  (Dkt. 19, Ex. 16 at 44-47).

Defendant's argument is erroneous. Counsel's "duty" in this case was to demonstrate to the jury that the State had not proved its case against the Defendant. She performed this duty through cross-examination of the State's witnesses and by pointing out the weaknesses in the State's case during closing argument. Notably, she placed heavy emphasis on the victim's uncertainty whether she was forced to touch the Defendant's penis or to move her hand. (T.T. 121, 136-139, 141-142)

In Florida, standard criminal jury instructions are presumed correct and are preferred over special instructions. *See State v. Bryan*, 290 So.2d 482 (Fla. 1974). Standard jury instructions are designed to cover all aspects and elements of a statutory offense and to avoid unnecessary comment on the evidence and are, therefore, preferred over requested charges that are specialized and require comment on the evidence. *See Perkins v. State*, 463 So.2d 481 (Fla. 2d DCA 1985) Moreover, it is not incumbent on the trial court to define words, used in charges which are understandable to persons possessed of the qualifications of jurors. *See Wester v. State*, 193 So. 303 (Fla. 1940).

In this case, it was not necessary to define the element of force for the jury's consideration. Based on the evidence, defense counsel's argument and the standard jury charge, this element was clearly understandable to the jury; *i.e.*, whether the Defendant took the child's hand and made her move her hand so as to masturbate the Defendant's penis. Thus, no special jury instruction on the element of "force" was required, nor can counsel be deemed ineffective for failing to ask for such an instruction.

**Ground Eleven**: Defendant claims counsel was ineffective for failing to move for a judgment of acquittal regarding the insufficiency of the State's evidence in establishing the "force" element of the charged offense. Defendant maintains that the State's evidence did not establish that he committed an offense by "forcibly grabbing" the victim's hand. Thus, his counsel was ineffective in failing to move for a judgment of acquittal, noting this failure of proof in the State's case.

Again, the Defendant's claim is without merit. Defense counsel moved for judgment of acquittal at the close of the State's case:

MS. DASILVA: The Defense at this time would made a motion for judgment of acquittal. The State has not proven that in fact that there was any masturbation that had been committed on the child, and that is one of the elements of the charge. *The child indicated that she doesn't recall if she was just being made to touch it or to move her hand, she doesn't remember that, and therefore, the State has not*

-24-

> *proven the element of the charge or proved a prima facie case.*

(T.T. 101)(emphasis supplied) After rebuttal argument from the State, the Court denied the motion for judgment of acquittal. (T.T. 102)

> The Defendant asserts in his memorandum of law that counsel argued the motion for judgment of acquittal with regard to the element of masturbation, but failed to address the use of force. Counsel's argument, quoted above, belies this assertion, i.e. "*The child indicated that she doesn't recall if she was just being made to touch it or to move her hand, she doesn't remember that, and therefore, the State has not proven the element of the charge or proved a prima facie case.*" This argument clearly subsumes the entire second element of the crime with which the Defendant was charged, *i.e.*, that he forced or enticed the victim to commit masturbation by forcibly grabbing the victim's hand and placing it on his genitals. (T.T.144) The Defendant has, therefore, failed to demonstrate any prejudicial omission on the part of his counsel in arguing this motion.

(Dkt. 19, Ex. 17 at 12-15).

Petitioner's counsel moved for a judgment of acquittal and argued that the State failed to prove the element of force. (Dkt. 19, Ex. 24, Vol. II at 101). The state trial court instructed the jury that:

> Before you can find the Defendant guilty of forcing or enticing a child under the age of 16 years to commit a lewd, lascivious, or indecent act, the State must prove the following two elements beyond a reasonable doubt:
>
> (1) Tiffany Hahn was under the age of 16 years:
> (2) Thomas O'Brien, Jr., forced or enticed Tiffany Hahn to commit masturbation of Thomas O'Brien, Jr., by forcibly grabbing victim's hand and placing it on his genitals.

(Dkt. 19, Ex. 24, Vol. II at 144).

Therefore, although the court did not define the word "force," it did instruct the jury that before they could find Petitioner guilty, they must find that Petitioner forced the victim to commit masturbation by grabbing her hand and placing it on his genitals. The "force" in this instance was Petitioner grabbing the victim's hand and placing it on his genitals, and this element

was established by the victim when she testified that Petitioner "took out his private part," "he took my hand and made me touch him," and "he took my hand and placed it there." (Dkt. 19, Ex. 24, Vol. II at 56-57).

Petitioner has failed to establish that the state trial court's denial of this claim of ineffective assistance of trial counsel was contrary to or an unreasonable application of the *Strickland* standard or resulted in a decision that is based on an unreasonable determination of the facts. *See* 28 U.S.C. §2254(d). Thus, relief on this ground will be denied.

**Ground Five**

Petitioner argues that the state court deprived him of his right to due process and violated the proscription against double jeopardy when the state trial court imposed an upward departure sentence after declining to do so during the original sentencing. Essentially, however, Petitioner argues that the state court improperly departed from the sentencing guidelines upon resentencing. (*See* Dkt. 14 at 23-27).

A federal habeas petition may be entertained only on the ground that a petitioner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. §2254(a). A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved. *Bronstein v. Wainwright*, 646 F.2d 1048, 1050 (5th Cir. Unit B June 1981). "State courts are the ultimate expositors of their own state's laws, and federal courts entertaining petitions for writs of habeas corpus are bound by the construction placed on a state's criminal statutes by the courts of the state except in extreme cases." *McCullough v. Singletary*, 967 F.2d 530, 535-36 (11th Cir. 1992), *cert. denied,*

507 U.S. 975, 113 S. Ct. 1423, 122 L. Ed. 2d 792 (1993).

Petitioner seeks to have this Court review the state court's failure to adhere to its sentencing procedures. Federal courts cannot review a state's failure to adhere to its own sentencing procedures, even if Petitioner sets out his claims as ones of equal protection or due process. *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988).  Therefore, relief on this ground will be denied.

**Ground Six**

Petitioner alleges the state trial court erred in denying his motion for judgment of acquittal because the State's evidence did not prove the "actual masturbation" element of the crime charged beyond a reasonable doubt, and he argues that his right to due process was violated when the State failed to prove this element of the crime.

Determination of whether the state's evidence is legally sufficient to survive an acquittal motion under state law is solely within the province of the Florida courts. Issues that present nothing more than issues of pure state law are immune from federal habeas review. *See Francois v. Wainwright*, 741 F.2d 1275, 1281 (11th Cir. 1984).  Therefore, to the extent that Ground Six asserts a claim of error of state law, it is not cognizable on habeas review. *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991).

The federal standard for reviewing due process challenges based on the sufficiency of the evidence is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979), *overruled on other grounds by Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851, 130 L.

Ed. 2d 808 (1995).

Petitioner was charged with and convicted of forcing or enticing a child under the age of

16 years to commit lewd, lascivious, or indecent act (Dkt. 19, Ex. 8).  The information charging

Petitioner stated that he:

> did unlawfully force or entice T. H., a child under the age of
> sixteen years to commit masturbation of [Petitioner], by forcibly
> grabbing victim's hand and placing it on his genitals, contrary to
> Section 800.04(2), Florida Statutes...

(Dkt. 19, Ex. 26, Vol. I at 1).

Section 800.04(2), Florida Statutes (1996) stated that any person who:

> Commits actual or simulated sexual intercourse, deviate sexual
> intercourse, sexual bestiality, masturbation, sadomasochistic abuse,
> actual lewd exhibition of the genitals, or any act or conduct which
> simulates that sexual battery is being or will be committed upon
> any child under the age of 16 years or forces or entices the child to
> commit any such act...

commits a second degree felony.

The state trial court instructed the jury that:

> the State must prove the following two elements beyond a
> reasonable doubt:
>
> (1) Tiffany Hahn was under the age of 16 years;
>
> (2) Thomas O'Brien, Jr., forced or enticed Tiffany Hahn to commit
> masturbation of Thomas O'Brien, Jr., by forcibly grabbing victim's
> hand and placing it on his genitals.

(Dkt. 19, Ex. 26, Vol. II at 144).

At Petitioner's trial, the State presented testimony that Tiffany Hahn, the victim, was

under the age of 16 at the time of the crime  (Dkt. 19, Ex. 26, Vol. II at 19; 48-49; 91).  The State

also presented testimony that Petitioner approached the victim, asked her "do you want to jerk

off[,]" took his penis out of his pants, then took the victim's hand and made her touch him on his

penis (Dkt. 19, Ex. 26, Vol. II at 55-57). In Florida, when a man exposes his penis and makes a

child touch it with her hand, said act establishes lewd and lascivious assault. *State v. Stone*, 677

So.2d 982, 984 (Fla. 5th DCA 1986).

      The evidence in this case, viewed in the light most favorable to the prosecution,

demonstrates that a rational trier of fact could have found Petitioner guilty beyond a reasonable

doubt of forcing or enticing a child under the age of 16 years to commit a lewd, lascivious, or

indecent act.

### Conclusion

      For the foregoing reasons, the Court finds that Petitioner has failed to establish that he is

entitled to federal habeas relief.

      **ACCORDINGLY**, the Court **ORDERS** that:

      1. The Amended Petition for Writ of Habeas Corpus is **DENIED** (Dkt. 13).

      2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and

close this case.

      **DONE AND ORDERED** in Tampa, Florida, on *January 9th*, 2008.

                          JAMES D. WHITTEMORE
                          United States District Judge

SA:sfc

Copies furnished to:
All Parties/Counsel of Record

-29-